Please. Amy Schafer, College Against Workers' Compensation Commission, 4100505. Counsel, please. Name, please, report. I'm Andrew Ritchie, attorney for appellant Amy Schafer. I would like to reserve five minutes for rebuttal. Good morning, Counsel. Good morning, Your Honor. Good morning, Counsel. Morning. Morning. The day is going fast. What did you say? The day is going fast. Oh, I'm sorry. Good afternoon. Good. In this case, where we deal with two separate accidents, there was an accident on November 23, 2007, and an accident on November 30, 2007. Now, this isn't a case of a repetitive trauma case where there could be numerous accident dates for the same accident. There's two separate, distinct accidents that were never consolidated. They were arbitrated on the same date, and the arbitrator ruled in favor of appellant Amy Schafer. The appellee appealed case number 07-WC-56125 to the commission, but there was never any appeal of case number 07-WC-56127. There was only an appeal of the 56125. The appellee argues that because they listed case number 07-WC-46127, that they substantially complied with the act, and that that was enough to confer jurisdiction on the commission. However, the standard is not substantial compliance. The standard is strict compliance, because we're dealing with a situation where jurisdiction is created by statute. And in cases of special statutory jurisdiction, the party seeking review must strictly comply with the statute conferring jurisdiction. So, if it's clear that the party intends to take an appeal, and there's a typographical or clerical error, the party's out before an appeal. Well, yes, that's the holding ESG wants. In the ESG wants, it was an Environmental Protection Act case, and there was an appeal to the circuit court, and they mistakenly left off the state as a party on that case. And while that error might seem minor, the court held that because they didn't comply with the strict, they didn't strictly comply with the Environmental Protection Act. Now, that's not a case from this court, correct? It's not a case decided on the industrial commission? It's not a jurisdiction case, but it does deal with special statutory jurisdiction, and that's why that case is precedential. It's also a matter where the party was left out. The party required by that act to be included in an appeal. Yes. Do you think that's different than a case number switch? Well, I think the number is more important, because in that case, I mean, there isn't any confusion in the fact that they left off the state. I mean, it's still clear what case it is, the case number is correct. But in our case, if you don't have the correct case number, it could create confusion with regards to which case you're dealing with. Because, I mean, workers' comp, there can be cases where there's 10 different case numbers. Yeah, but the case number is not separated from the petition. Obviously, the petition was properly drafted. At least there's no allegation that the petition was defective. You've got a properly drafted petition. I assume you're not arguing on behalf of the employer that you had no idea that an appeal was being taken on this other case. Your argument is there's a clerical error, and what about the response that that improperly elevates form over substance? Well, I don't believe that's the case, because I believe the case number is, without the case number properly asserted, then there can be no jurisdiction asserted. Because, I mean, if you say that as long as there's a small clerical error, then the court can still assert jurisdiction, then you can get into situations where what would happen if they filed a case, if they filed a petition for review and they only listed one case number and there were 10 cases, then could you say they can assert jurisdiction over all 10 cases? Well, let me give you an extreme example. So you're citing cases from, it's not on the industrial commission. You have a felony case. In the old days, somebody sentenced to death. The attorney that files a domestic appeal puts down a wrong number. Are you telling this court that the Supreme Court would never hear the death penalty case? They had no jurisdiction because of a typographical error? Well, there wouldn't be special statutory jurisdiction in that case, if it's a criminal case. Because the circuit court would hear the criminal case, and circuit courts are courts of general jurisdiction. Well, I understand your argument. If there's one number off in the petition, the court has no jurisdiction. That's obviously your argument. Now, whether or not we agree with that... Well, we're dealing with strict compliance. Obviously, if you're dealing with substantial compliance, then you could say that they did substantially comply. But the standard for this case is strict compliance. Where in the statute do you find anything referencing case numbers? I'm sorry, what? Where in the statute do you find anything referencing case numbers? Well, there isn't, but... Industrial act of the commission? Well, there isn't, but the same is true of the ESG case. In the ESG Watts case, the Environmental Protection Act, it does not specifically state anywhere in the Environmental Protection Act that you have to list the state as a party. Are Environmental Protection Actions subject to the Administrative Review Act? I believe it is, but I'm not sure. Well, if it is, then you might reference the Supreme Court's decision in Lockett because the Administrative Review Act specifically says that within 35 days you have to file a complaint naming all parties. In the Lockett decision, they left out the name of the party and the Supreme Court said that you didn't invoke the jurisdiction. That's because the naming of a party was required under the statute. I'm now back to Justice Holdren's question. Where in this statute does it say that the placing of the case number is required when one seeks review? Well, it doesn't specifically state that, but what the act states is that unless a petition for review is filed to either party within 30 days after receipt by such party, then the decisions will become the decision of the commission. There was a petition for review filed for case number 07WC56125 and there was no petition for review filed for 07WC56127 and I know it's only one number, but you have to strictly comply with the statute. There is no petition for review filed for that case number so the commission cannot assert jurisdiction. What is the purpose of case numbering? Or is it really the part naming of the parties? Well, no, it's because in this case the parties were the same on both cases. Both cases were heard on the same day. They had the same parties. So if you're saying, well, it's only the case number, the parties were the same, the date of arbitration was the same, it's the same case, you can't say that because there's two separate cases on two separate dates of accident. They're both heard on the same case and involve the same parties. So you can't just say that the case number is off, but it's still obvious it's the same case because it's not obvious it's the same case because there's two separate case numbers, two separate dates of accident. No one was confused here, were they? I mean, the commission saw the problem right away, wrote wrong, somebody at the commission wrote the wrong number. Well, that is correct. Everything else that went out was under the right number. Others at the commission actually talked about it under the correct number. Well, that is correct, but the jurisdiction is a threshold issue and the commission cannot imply or infer jurisdiction because jurisdiction is absolute and it cannot be waived. If it's a jurisdictional issue. That's correct. We would argue that it is a jurisdictional issue. Rather than spend all of your time on this issue, there's another looming important issue. What about your argument that the commission erred in reducing the awarded TTD benefits based on its conclusion that the claimant could not collect TTD while she was able to perform light duty work? Well, let me just first start by clarifying the timeline in this case because it does get a little confusing. The first accident occurred November 23, 2007. The petitioner or the appellant was placed on light duty by Dr. Boga on November 27, 2007. Now, her employer ignored the light duty restrictions, so she was forced to, or rather she continued to work full duty during that period and she injured herself again on November 30, 2007. Now, after she injured herself again, she was fired on December 5, 2007. She went to see Dr. Boga again and she received, she was placed, she was removed from work on December 10, 2007. She also received an off work slip on December 13, 2007. Now, in both, now the, both the December 10 and the December 13 slips, they both say off work, so there's no, there's no, those are basically the same, the same work restrictions. They both say off work. Then on December 18, 2007, Dr. Boga was placed on light duty. Then on, on January 10, I'm sorry, January 11 of 2008, Dr. Boga placed the appellant back off of work entirely. Now, it is clear that there was no period in time where Dr. Boga said she could, said that the appellant could return to full duty work. The appellant remained on either light duty work or off work entirely during that entire period of time. And she was fired while Dr. Boga's light duty restrictions were still in place. And interstate scaffolding is clear that where a claimant is terminated while on light duty, they are still entitled to GTD benefits. And there's really no case, I mean, there's, I think there's really no way you can say that the appellee's argument that she should have, that appellant should have done a job search isn't consistent with the case law because the interstate scaffolding states that she, that a claim is entitled to GTD until their condition, until they reach maximum medical improvement or their condition stabilizes. In this case, appellant's condition never stabilized. She never reached maximum medical improvement, so she is still entitled to GTD for that entire period. The appellee also makes an argument about the accident date, the accident causation. It's within the province of the commission to determine what the, whether the credibility of witnesses and a claimant alone, their testimony is enough to and she's not required to have other witnesses to testify to the accident. And the commission was free to reject the testimony of appellee's witness, Chris Strong. They found her uncredible due to the, you know, it's clear there weren't any other complaints against the appellant prior to her filing these applications and then she made all these accusations about the appellant. And the appellee also mentions the incident reports that were filed and the appellee states that there's discrepancies between them, but there's no discrepancies in the incident reports. It doesn't matter who, which employee signed the reports. It doesn't matter what phone number is on the reports. It's clear she gave notice within the statutory time period and it's a notice pleading state, so it doesn't have to state all her symptoms or it doesn't have to state with incredible clarity what the accident was on those incident reports. With regards to the medical bill issue, we, the medical records clearly were all subpoenaed correctly and they all contained the subpoena cover sheets and the medical bills clearly match up with the medical records. So it's clear that we've established the reasonableness of the medical bills. The appellant would request that the court find that the, the appellant would request that the commission reverse the commission's decision finding that it had jurisdiction and in case the court finds that the commission did have jurisdiction, the appellant would request that the commission's decision on the issue of GTD be reversed. Thank you, Your Honors. Counsel, please. Thank you. If the court will indulge me, I'd like to begin with a brief discussion of the jurisdictional issues from our perspective, talk a few minutes about the medical bill issue, the causation as it the issue that I find the most difficult for me to have a conversation with is the GTD issue. So if we might save that one for last, I'll stand here as long as you want to ask questions. Is that going to be your hardest argument? Your most difficult argument? Well, I think it's probably the lesser significant of the arguments, Your Honor. I think the medical bills is a significant argument. It's a pretty good chunk of change and I think that they completely failed to demonstrate their case on that. But just, if I may, on the jurisdiction, I think the standard on this for the court to apply whether there was proper jurisdiction at the commission level here is an abuse of discretion. And I say that for several reasons. One, we're not talking about reviewing a statutory conferring of jurisdiction with specific steps as we often see in cases where we're coming from the commission to the circuit court. We've all seen those cases, the bond issues and all those types. We've got strict compliance, we've got substantial compliance. What we've got here is a very general statute that confers power to the commission. The commission has set its own rules. Rule 7040.10 establishes procedures for filing a petition for review to the commission. It doesn't lay out any great details. This court has said, and we cited it in our brief, the TCC case talks about the court acknowledges the discretion vested with the commission to interpret and apply its own rules. Now that's what we believe happened here. Now the court made an excellent point when it said, where was the confusion? When I reread the reply brief, getting ready for this, they're arguing, oh my god, this is creating a confusing situation. Well, it does not. The commission wasn't confused. They weren't confused. They didn't even feel it was an issue until just before oral argument when one of the commissioners contacted counsel and said, is this an issue? Maybe we need to brief it. Submitted very thorough briefs by both sides and the issue was addressed at the commission and in a two to one decision, obviously, they decided that there was jurisdiction. Now, I think one thing that we can see from this and from the discussion the court's had, there's not a lot of authority out there deciding what our guidelines are. But what's interesting is when we look at the commission's decision here. So a commissioner contacted counsel to ask if this was an issue? That's my understanding. It was not me. It was Mr. Leinfelder and John Bichardi that had been contacted and said, is this the dissenting commissioner? I think it was. We're not saying that there was anything improper. I'm just asking for information. If it is a dissenting commissioner written on this issue. Now, the interesting thing, as I was saying, is that when recognizing that there's not a lot or really any controlling authority, what did the commission do? It looked at the cases concerning 19F and it said, we have scenarios where there's strict compliance. We have scenarios where there's substantial compliance. And they went through a litany of the tests and they announced or they restated the rule that I've often argued before the court. There are times when a party will completely fail to undertake an action and this court has applied strict compliance to those scenarios. There are times when a party does something but does it imperfectly and this court will apply a substantial compliance standard. The Chadwick case is a perfect example. We cited that in our brief and I believe it was cited by the commission. They found this was substantial compliance. Obviously, there's no prejudice. That's one of the questions that this court will often ask when it's applying the substantial compliance test in the 19F scenario. What's the prejudice? Well, here there is no prejudice. This was not even an issue until somebody called in and said, would you brief this for us? So, I don't want to beat a dead horse on this. I guess the last comment I would make is the EGS case or ESG case. It is an administrative review case under the Administrative Review Act. It is failure to include an indispensable party. I know when I get administrative review cases, I'm petrified of making sure I get the indispensable parties included. And that's a wholly different scenario than we have here. And I found it ironic when I looked at the dissenting commissioner's comments, that while he applies the substantial compliance rules from the 19F cases, he then takes it to the next level and applies the interpretation from a completely unrelated area of the law also at the circuit court level. So, I really give that dissent zero merit. Now, the issue of the medical. I asked if I could address the medical net causation. I'll be very brief on the medical. Climate presented Exhibit 9, which is a list of medical bills, and we cited that on reasonableness. Medical bills have not been paid, and there was no testimony offered by a physician that these were submitted, that these were reasonable, necessary, or causally connected. Land of Lakes sets forth the standard, and we cited that at pages 30 and 31 of our brief. I think it's telling to look at their reply brief. How did they respond? Section 16 says when we file a subpoena and we get medical records, they're presumed to be correct. And they're making the analogy that says, well, if they're correct, then there's a leap that we can't make. If it is, then some of the provisions in the new amendments just went out the window with the ability to get utilization review boards and that type of thing. That's not how comp works. They might be true and accurate copies of the documents, but that doesn't mean that everything in them is gospel, nor does it mean that everything in those records is reasonable and necessary. So, that's a poor response. Second thing they point to is the ESG case. We've talked about that. Again, I think this is a situation where the petitioner had a burden of proof and they didn't meet it. It's that simple. What's reasonable and necessary is a question that was put to the commission early in the transcript when those records were offered, and they never met it. They never met the burden. Now, we move into the issue of the NEC. Now we're starting to get into an issue where there are some things on both sides of the evidence here, but we think that the jurisdictional issue is a funnel in this case. It's a funnel to all the issues that were before the court. It's a funnel for them from the standpoint that if the court doesn't find jurisdiction, the TTD argument that they're seeking goes out the window and they get their arbitrators awarded TTD. Likewise, the issues that we're saying are significant medical, the NEC, those issues are also tied to that case. So, that's why the jurisdictional issue is very important in this case. Now, to talk just briefly about the NEC. It's our position that the record does not show that her neck injury or her problems with her neck were causally related to her employment. And we say this for this reason. There were no complaints with respect to the NEC until we see a medical record come up in mid-January where Dr. Warrick says, oh yeah, by the way, she mentioned back in December 5, December 7 that she woke up and she had a very stiff neck and her problems with her neck began at that date. Now, there's nothing that ties that into this accident. The only thing that they can come up with is there's some ambiguous references in the record, some very general references to tingling and numbness in her hands, tingling and numbness in her feet. Maybe she's got bad circulation. We don't know, but you can't say somebody who's got tingling and numbness in their hands on an isolated incident all of a sudden has a herniated disc where there's no other complaints that are documented. We don't have that. Look at the records when she went to see Dr. Bova on 11-27 and 12-10. Did she say anything to him about my neck hurts so bad, I have a problem with my neck? She didn't say anything about that. That's very significant. Now, we don't have a notice issue here because that was not listed on the forms, but just for the sake of pointing out to further our case, look at the forms that were filled out in this case as to what accident she was claiming, the 11-23 and the 11-30. It's back, it's a little back, it's a little back. There's nothing for reference in the cervical. So we think that that finding is against the manifest way of the evidence and we would ask the court to set that aside. Real briefly, Mr. Elwood. Yes. What about the argument the claimant's testimony standing alone provided a chain of events that was sufficient to establish causation? You're referring to the neck. We're not talking about the low back. Well, I would say that we can't use a chain of event because we point, we have that odd incident from the, I think it was December 12th, when she woke up with that problem with her neck. When she identifies a date that's not related to an accident date. Now, had this been a scenario where the date that you're pointing to was the date of one of these two work accidents, it would be a different story. Then the chain of events analysis would possibly be appropriate because you could say she's okay, she has a work accident, now she's got neck problems. In this situation, we have her testify well over a week after she has a second accident, worked with her low back, that I woke up with an incredibly stiff neck. So, I don't think that that theory applies. The other thing, well, I guess... What about the back injury? I'm sorry? What about the back injury? Are you suggesting there was no medical evidence to support that? I think we have to take the record as it is on that, Your Honor. I mean, there's evidence in the record that she said she had a back injury, a low back injury. Well, there's an MRI taken 11 days after the second accident that supported it. Right. I think that's point noted. The last issue I'd like to address, and again, I indicated earlier, this is one that's a little bit more difficult. It's the TTD award. What did the Commission do here and why were they doing what they did? And that runs us up against a problem. Obviously, the Court's aware of the interstate scaffolding case. How does interstate scaffolding, which came out about four to six months after this decision, impact this? Their position is interstate scaffolding says, look, if you're not an MMI, you get your TTD. In this case, when we looked at this, we were trying to figure out what it was that the Commission did. The first thing I guess I would note with respect to their comments earlier, when she was terminated on 1205, they indicated that she was still under her restrictions. And if you look at the... When you read her testimony, she specifically says in her testimony that her restrictions, original restrictions, ended on 1204. So on 1205, when she was terminated, she had no restrictions. And those continued until she went back on 1210. But the question is, what do we do with that roughly three and a half week period? Is there something in this record that supports what the Commission did? And when I look at what the Commission did on TTD on page three of their decision, they're focusing heavily on that period of time between December 10th, December 18th, and January 11th. And they're concluding they say... Let me find my starting point... Dr. Boved released a petition for light duty work on December 18th. The petitioner candidly admitted she applied for unemployment. The Commission concludes during this period, while she was capable of work, light duty work, they say she still did not prove that she could not work. Now, how do we mesh that with interstate scaffolding? I think that's a very good question. That's a tough question. Well, aside from interstate scaffolding you're citing, has the law long been settled that the fact that an employee has the ability to do light work doesn't preclude a finding of TTD? Isn't that always been the case? Well, prior to interstate scaffolding, there were a lot of different cases that we talk about. Did they voluntarily remove themselves from the workforce? Were there jobs available within their restrictions? Those types of issues. If an employee got terminated, did that end their TTD? But here the Commission, perhaps against itself, framed the issue very specifically. I don't think you can dance around the holding. They felt because she was incapable of working, albeit light duty, they concluded she doesn't get TTD. That's an incorrect legal conclusion, isn't it? That's what they said, and that seems to have some issues with interstate scaffolding. We would agree with that. Now, when they make their comment that she demonstrated she could not work, that she did not work, but couldn't demonstrate she couldn't work, that's a tough distinction. We appreciate your tongue-in-cheek candor there. We realize it's very difficult for you to do that. Again, we ask the Court to take a look at this jurisdictional issue as that is the funnel for this case. We think there is jurisdiction and that sets the tone for the rest of the case. But most significantly, the medical. I think this case screams for that portion to be reversed. Thank you very much. No. The appellee mentions that neither party was neither the clinician or appellant was confused about the case number. And we would agree with that. There was no confusion in this case, but prejudice does not have to be shown in a jurisdictional issue. Jurisdiction is absolute and it can't be weighed. With regards to the Chatwick case, that case dealt with the appeal to the circuit court of a, what happened in that case was in the precipice. They did not put the address of one of the defendants. It's quite a different issue in this case when the case number was not put on the petition purview in the commission. I think the commission has to be held to, you know, you can't say that the commission can't have the has less jurisdictional powers than the circuit court because the commission has the ability to hear reviews of cases through the act and without complying with the without strictly complying with the act the commission cannot assert jurisdiction and there can be no jurisdiction implied or inferred by the commission. With regards to the medical bills, the appellee states that it has to be demonstrated that the commission did not meet its burden, but the appellee does not state how the commission erred in not meeting its burden. I mean the medical records speak for themselves and the appellee does not state anything in the medical records that demonstrate that the medical bills do not match up with the medical records or they do not demonstrate anything in the record that establishes that the reasonableness of the bills is not met. You know, that's within the province of the commission to consider and the commission ruled that the medical bills were reasonable and their decision was not against the manifest way to the evidence. The appellee also mentioned that we need the jurisdictional issue, we need jurisdiction to be established in order to change the arbitrator's ruling on TTD, but that's incorrect. The arbitrator ruled in our favor on the TTD issue. It was the commission that changed the TTD issue, finding that the period of November 17, 2007 through December 10, 2008, she was not entitled to TD for that period. That's the commission overruling the arbitrator's decision for that particular period. The appellee also mentioned that she didn't have any complaints to her neck until after December 5, 2011. And you know, he mentioned the instant where she woke up from bed with stiffness in her neck. If you look at the medical record, what the medical record actually says for December 5, 2007 is that she woke up from sleep without any other injury of stiffness in the posterior cervical region of her neck. Now keep in mind the second accident happened November 27, 2007, so we're talking about a period of about a week after her injury. Now she was obviously experiencing pain in her back and her leg and other areas of her body, so it's reasonable for her not to report every single problem she was experiencing to her doctors. The pain from other parts of her body could have been masking that pain. In addition, I mean, you can't say that her waking up on December 5th is a superseding cause of injury. I mean, if waking up was a superseding cause of injury, I'd injure myself 30 days a month because I wake up every day. It's clear there wasn't any other injury between November 27th and December 5th and the medical records make that clear. You know, whether her condition gets worse and, you know, she all of a sudden starts experiencing symptoms in her neck, that doesn't preclude liability unless there's a superseding cause. No superseding cause has been demonstrated. With regards to her termination on December 5th, 2011, it's true that the light duty slip on November 27th, 2011 did state that she was on light duty for one week, but there was never any indication that Dr. Bover returned her to full-day work after that. The next work slip, I'm sorry, I'm out of time. May I briefly conclude? You're out of time. You can finish that sentence. I'm sorry, what did you say? You can finish the sentence you're doing. On the Dr. Bover's work slip, the next work slip was Dr. Bover's slip of December 10th, 2007, which removed the appellant from work. So there's no period in that time where Dr. Bover released her back to full-day work. So she was either on light duty or... Alright, thank you, Jeff. Clerk, we'll take the matter under advisement. For disposition, we'll stand and reset.